UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CLEVELAND RAYFORD, M.D., M.A., | |
| Petitioner, | |
| v. | Case No. 08-cv-204-JPG |
| WEXFORD HEALTH SOURCES, INC., | |
| Defendant. | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendant Wexford Health Sources, Inc.'s ("Wexford") motion for summary judgment (Doc. 21). Plaintiff Cleveland Rayford, M.D., M.A., has responded to the motion (Doc. 24), and Wexford has replied to that response (Doc. 26).

**I.     Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, the discovery and disclosed materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. This standard is applied with special scrutiny in cases, such as employment discrimination cases, that often turn on issues of intent and credibility. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort*

*Wayne*, 91 F.3d 922, 931 (7th Cir. 1996).  A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Michas*, 209 F.3d at 692.  Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *accord Michas*, 209 F.3d at 692.

**II.     Facts**

Viewing the evidence and drawing all reasonable inferences in Rayford's favor, the Court finds the following relevant facts for the purpose of this motion.

Wexford is a contract medical care provider serving detainees in various correctional facilities, including, at some points in time, those run by the Illinois Department of Corrections ("IDOC"). Rayford, who is African-American, is a medical doctor and holds a master's degree in healthcare management.  All parties agree that Rayford began working for Wexford in 2000 as a regional medical director ("RMD"), a management position, and that he had a successful tenure with the company. Rayford was Wexford's first RMD in the state of Illinois and oversaw all the IDOC facilities Wexford contracted to serve, the number of which doubled in the first few years of his employment.  In 2003, Wexford hired a second RMD, an African-American woman named Cynthia Alston, to oversee the northern half of the state and charged Rayford with overseeing the southern half.  When Alston left her job about a year later, Rayford recommended Arthur Funk, one of the doctors he had trained, take her place as RMD for the northern part of Illinois.  Funk is Caucasian.  Wexford accepted Rayford's recommendation and hired Funk to replace Alston.

All went fairly smoothly until the summer of 2005 when Wexford was unsuccessful in its bid to renew the health services contract with IDOC.  As a result, Wexford was forced to lay off a number of its Illinois employees, including a substantial number of managers.  On July 8, 2005, Thomas

Lundquist, Wexford's chief medical officer, told Rayford that he would have to lay off either Rayford or Funk and that, since the utilization management department preferred to keep Funk, he was going to let Rayford go. He made it clear to Rayford, however, that Wexford planned to rebid for the IDOC contract in December 2005, and that if it was successful, it would rehire Rayford as an RMD. Wexford offered Rayford a severance package and laid him off.

The parties tell different versions of what transpired in a July 22, 2005, phone call between Rayford and Elaine Gedman, Wexford's vice president of human resources and risk management. Gedman was one of the two Wexford representatives who had bargained unsuccessfully for the IDOC contract. On July 22, Rayford and Gedman's conversation turned from severance matters to Wexford's loss of the contract. According to Rayford, he told Gedman that his state senator had informed him Wexford had lost the contract because it had not bargained "in good faith."[1] Rayford opined that Wexford should have sent someone like him to the negotiations, implying he could have done a better job that Gedman and her bargaining partner. Gedman was upset and told Rayford he did not know what he was talking about. In the same conversation, Rayford told Gedman that during his tenure he had not felt comfortable talking to her in her human resources capacity about problems he had had with Diana Malloy, Wexford's vice president of operations, because she and Malloy were friends, and Rayford believed Gedman would not do anything to help him. He then complained to her that Malloy had not treated him fairly or humanely – in fact, had "treated him like a dog" – for years.

On the other side, Gedman remembers Rayford telling her it was Wexford, not just Malloy, who had been unfair to him and had "treated him like a dog" for years. She further remembers his expressing dissatisfaction with Wexford's management team and the company as a whole and advancing his opinion that Health Professionals, Ltd. ("HP"), the company who successfully bid for

---

[1] Exactly what bargaining "in good faith" with the administration of former Illinois governor Rod Blagojevich means is not clear from the record in this case.

the IDOC contract, was better than Wexford and would provide better inmate care. Rayford denies that he criticized Wexford as a whole or its quality of care in any way. The Court must accept that statement and Rayford's version of the phone conversation as true for the purposes of this motion. Nevertheless, Gedman later reported her false version of the conversation to Lundquist.

In the meantime, HP employed Rayford as the site medical director ("SMD") at Pinckneyville Correctional Center ("Pinckneyville CC"), which involved overseeing only medical services provided at that institution. Rayford worked there until Wexford successfully bid on the IDOC contract in December 2005.

In mid-December 2005, Rayford called Gedman to ask if Wexford would rehire him in his current position, the SMD at Pinckneyville CC, after Wexford took over again. He did not ask about becoming an RMD because he did not want to have contact with Malloy or to deal with the politics that came with the regional position. Gedman states that Rayford said he understood why Wexford would not want him in a management position like the RMD, but again, Rayford denies this statement and the Court must accept Rayford's version of the interaction as true. After consulting with Lundquist, Gedman told Rayford Wexford would not hire him in a management position such as an SMD because he would not work out in Wexford's management scheme. Instead, she offered him a job as a PRN doctor. A PRN doctor works only as needed by the facility and does not earn benefits. Rayford declined the PRN doctor job.

Rayford appealed the decision not to rehire him to Kevin Halloran, Wexford's chief executive officer and president. He received a response from Gedman that he would not be rehired in a management position within Wexford in light of the circumstances surrounding his departure and "subsequent communications with Wexford Management."

The Pinckneyville CC SMD position remained vacant until June 2006, when Wexford hired Timothy Mathis, who is Caucasian, as a part-time acting SMD for Pinckneyville CC. In October 2007,

Mathis was replaced by Olukunle Obadina, an African-American, who took the full time position of SMD at Pinckneyville CC. Wexford ultimately hired Dennis Larson, who is Caucasian, as an RMD.

Rayford then filed a charge with the Equal Employment Opportunity Commission and subsequently received a "right to sue" letter. He filed this timely lawsuit alleging Wexford discriminated against him because of his race when it refused to rehire him in December 2005 in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.[2] Wexford now asks the Court to grant summary judgment in its favor.

### III.    Analysis

Title VII prohibits discrimination on the basis of race: "It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). Similarly, 42 U.S.C. § 1981 is "a broad-based prohibition (and federal remedy) against racial discrimination in the making and enforcing of contracts." *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 393 (7th Cir. 2007), *aff'd*, 128 S. Ct. 1951 (2008). Like Title VII, § 1981 also prohibits an employer from discriminating against a job applicant on the basis of race. *See Blise v. Antaramian*, 409 F.3d 861, 866 (7th Cir. 2005).

To withstand a motion for summary judgment in a Title VII or § 1981 case[3], a plaintiff may present direct proof of discrimination through direct or circumstantial evidence. *Walker v. Glickman*, 241 F.3d 884, 888 (7th Cir. 2001); *Debs v. Northeastern Ill. Univ.*, 153 F.3d 390, 395 (7th Cir. 1998). A plaintiff may also proceed using the burden shifting mechanism outlined in *McDonnell Douglas*

---

[2] Rayford's claim does not seek relief under the theory that his lay-off in July 2005 was discriminatory.

[3] The same standards apply to Title VII and § 1981 cases. *Bennett v. Roberts*, 295 F.3d 687, 697 (7th Cir. 2002).

*Corp. v. Green*, 411 U.S. 792, 802 (1973). Rayford claims that, although he has presented no direct proof of discrimination, he may well be able to do so after further discovery. However, in order to withstand summary judgment, he must do so now or ask for an extension of time under Rule 56(f), which he has not done. "[S]ummary judgment is the 'put up or shut up' moment in the life of a case." *AA Sales & Assocs., Inc. v. Coni-Seal, Inc.*, 550 F.3d 605, 612 (7th Cir. 2008) (citing *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)). Because Rayford has not "put up" any direct or circumstantial evidence of discrimination, he must proceed under the *McDonnell Douglas* approach.

Under this approach, a plaintiff must first establish a *prima facie* case of discrimination, which creates a rebuttable presumption of discrimination. *Grayson v. City of Chi.*, 317 F.3d 745, 748 (7th Cir. 2003). The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action. *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 790 (7th Cir. 2007); *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007); *Grayson*, 317 F.3d at 748. If the defendant is able to provide evidence of such a reason, the burden shifts back to the plaintiff to show that the articulated reason is actually a pretext for discrimination. *Fane*, 480 F.3d at 538; *Boumehdi,* 489 F.3d at 790; *Grayson*, 317 F.3d at 748. At the pretext stage, the plaintiff must provide evidence that the employer's stated reason for the adverse action is dishonest and that the true reason for the action was discriminatory intent. *McGowan v. Deere & Co.*, 581 F.3d 575, 581 (7th Cir. 2009); *Perez v. Illinois*, 488 F.3d 773, 777 (7th Cir. 2007). The ultimate burden of persuasion remains at all times with the plaintiff. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

    A.    *Prima Facie* Case

The parties agree about the first three elements of the plaintiff's *prima facie* case: (1) that the plaintiff belongs to a protected class – a racial minority, (2) that he applied for and was qualified for an

open job and (3) that he was not hired for the job. *See Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007); *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 861 (7th Cir. 2005); *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 790 (7th Cir. 2007). They further agree that Rayford is African-American (a protected class), that he was qualified for the SMD job and that he was rejected for that job. They disagree, however, about the applicable fourth element.

Rayford goes right to the source, *McDonnell Douglas*, to argue that in cases alleging the defendant failed to hire a person on the basis of his race, the plaintiff must show "that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Rayford contends he can meet this burden because after he was rejected, Wexford kept the SMD position open for an additional six months.

On the other side, Wexford argues that the test must be modified for cases alleging a failure to *rehire* a former employee. It argues the plaintiff must show "a similarly situated employee outside of [his] protected class, and with a similar work history, was reinstated." *Timms v. Frank*, 953 F.2d 281, 286 (7th Cir. 1992). Wexford contends Rayford cannot point to a similarly situated non-African-American employee who was reinstated when he was not.

When determining the applicable fourth element of a plaintiff's *prima facie* case, it is important to keep in mind that the approach set forth by *McDonnell Douglas* is flexible and must be adapted to the specific factual circumstances of a particular case. *Pantoja v. American NTN Bearing Mfg. Corp.*, 495 F.3d 840, 845-46 (7th Cir. 2007); *Gadsby v. Norwalk Furniture Corp.*, 71 F.3d 1324, 1334 (7th Cir. 1995). Considering the facts of the case at bar, the Court believes either the *McDonnell Douglas* or the *Timms* formulation of the *prima facie* case would be appropriate. Indeed, the Seventh Circuit recently articulated the *prima facie* case with both alternatives for establishing the fourth element:

(1) she was a member of a protected class; (2) she was qualified for an open position for

which she applied; (3) her application for employment was rejected; and *(4) Kenosha filled the position with someone not of Blise's protected class, or left the position open.*

*Blise v. Antaramian*, 409 F.3d 861, 866 (7th Cir. 1005) (emphasis added).

For example, in this case, if Rayford had been able to show that both he and Funk had applied for the Pinckneyville CC SMD position, that they were similarly situated in experience and past performance, and that Funk was hired and Rayford was not, an inference of discrimination would be warranted under the *Timms* articulation.  However, it is clear that he cannot create an inference of discrimination in this way, as Wexford points out.  This is of no moment, however, because he can create the inference under the *McDonnell Douglas* articulation of the *prima facie* case.  It is undisputed that Rayford was qualified for the SMD job but not hired and that the job remained open for six more months.  This is also sufficient to create an inference of discrimination.  In sum, as acknowledged in *Blise*, either the *Timms* or *McDonnell Douglas* showing – or some other showing tailored to the specific situation in the case – is sufficient to move to the next step of the burden-shifting mechanism.  Since Rayford has satisfied the *McDonnell Douglas* articulation of the test, the Court turns to Wexford's proffered reason for not hiring him as Pinckneyville CC's SMD.

> B. <u>Legitimate, Nondiscriminatory Reason</u>

Wexford has satisfied its burden of production to articulate a legitimate, non-discriminatory reason for its action.  *See Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 790 (7th Cir. 2007);  *Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2003).  It contends Lundquist made the decision not to rehire Rayford in a management position such as an SMD because, based on Gedman's reports to him, he believed – albeit falsely – that Rayford had made negative comments about Wexford and its management team.  Having a bad attitude toward the employer is a legitimate reason for failing to hire a job candidate.  *See, e.g., Koski v. Standex*

8

*Int'l Corp.*, 307 F.3d 672, 677 (7th Cir. 2002) (employee's "inappropriate disparagement" of employer's management and coworkers was legitimate, nondiscriminatory reason for terminating employee); *Roberts v. Separators, Inc.*, 172 F.3d 448, 452 (7th Cir. 1999) (employee's badmouthing of coworkers, criticism of supervisor, expression of opinion that company was poorly run and indifference to his retention by the company were legitimate, nondiscriminatory reasons for terminating employee). Support of corporate management is even more important for members of a management team, as Rayford would have been as an SMD, than for non-managerial employees. Rayford's perceived lack of support of Wexford was a legitimate, nondiscriminatory reason for failing to rehire him.

  C.  <u>Pretext</u>

  There is no evidence from which a reasonable fact-finder could determine that Wexford's proffered reason for its failure to rehire Rayford was a pretext for race discrimination.

  At the pretext stage, the question is not whether the employer's proffered reason is correct or wise but whether it is the true and genuine reason for the employer's action rather than a pretext for a decision based on some other, undisclosed reason. *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006). The plaintiff "ultimately must be able to point to some circumstances from which an inference can be drawn that the real reason for the employment action was discriminatory." *McGowan v. Deere & Co.*, 581 F.3d 575, 581 (7th Cir. 2009); *Perez v. Illinois*, 488 F.3d 773, 778 (7th Cir. 2007). If the proffered reason is the true reason for the employer's decision, the employer is entitled to summary judgment. *Forrester*, 453 F.3d at 417. If the proffered reason is not the true reason, and if the evidence used to establish the plaintiff's *prima facie* case combined with evidence of the defendant's dishonesty in the

proffered reason is sufficient to create an inference of discriminatory intent, the case must be decided by a jury. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-49 (2000); *McGowan*, 581 F.3d at 582.

Here, the Court focuses on Lundquist's honesty, for he was the decision-maker. There is no factual dispute that Gedman falsely told Lundquist that Rayford had made derogatory comments about Wexford and its management, and there is no evidence from which a reasonable jury could find Lundquist knew of the falsity of Gedman's report. Furthermore, there is no evidence from which a reasonable jury could infer Gedman's report did not motivate Lundquist's decision and some other reason did. Six months before – prior to the July 22, 2005, conversation between Rayford and Gedman – Lundquist stated he was willing to rehire Rayford in a management position. In fact, Wexford had hired African-American managers in Illinois in the past (Alston and Rayford) and continued to hire them after it refused to rehire Rayford (Obadina). Based on the evidence, no reasonable fact-finder could find Lundquist's decision, even though it was based on a false report, was dishonest or a pretext.

The situation in this case is analogous to an example cited in *Forrester*. There, the Court of Appeals discussed an employee who was fired because of a false report that he had sexually harassed someone:

> Suppose the complaint of sexual harassment in this case had been a pure fabrication, with "no basis in fact" whatsoever – yet it was believed by the employer and it was that belief and nothing else that caused him to fire the plaintiff. There would be nothing pretextual about his action. A pretext, to repeat, is a deliberate falsehood.

*Forrester*, 453 F.3d at 419. No evidence suggests Lundquist's explanation for his failing to rehire was a deliberate falsehood.

To the extent the evidence may support the inference that Gedman played a role in Lundquist's decision and that her proffered reason for opposing Rayford's rehire was not honest, Rayford still has not satisfied his burden because there is no evidence suggesting Gedman's dishonesty was due to Rayford's race. It is true that Gedman was upset with Rayford for criticizing her performance in the IDOC contract negotiations and as a human resources manager. It would be reasonable to infer from that fact that she might want to retaliate against him by preventing his being rehired in a good position like an SMD and preferred to offer him the inferior position of a PRN doctor. However, that would not violate Title VII or § 1981, which prohibit race discrimination but not unprofessional management decisions. Furthermore, even if Gedman was biased against Rayford because of his race, there is no evidence Lundquist knew or should have known of that bias such that he should have suspected she was lying to him about her July 22, 2005, conversation with Rayford.

In sum, considering all the evidence in this case, there is not a scintilla of evidence showing that Gedman's animosity toward Rayford was because of his race or that Lundquist made his decision on the basis of anything other than the legitimate, nondiscriminatory reason proffered by Wexford.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Wexford's motion for summary judgment (Doc. 21) and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: February 2, 2010**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**